UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

JOSEPH PALMER,

              Plaintiff,              Case No. 2:12-cv-309

v.                                            Honorable Robert Holmes Bell

ANDREA AIKENS et al.,

              Defendants.
_____/

**OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint on immunity grounds and/or for failure to state a claim against Defendants Woods, Schuh, Nadeau and O'Brien. The Court will also dismiss Plaintiff's Eighth Amendment claim against Defendant Aikens. The Court will serve Plaintiff's First Amendment claim against Defendant Aikens.

**Discussion**

      I.        Factual allegations

Plaintiff presently is incarcerated at the Oaks Correctional Facility but complains of events that occurred at the Chippewa Correctional Facility (URF). In his *pro se* complaint, he sues the following URF employees: Food Service Supervisor Andrea Aikens, Hearings Officer Sheila E. O'Brien, Assistant Deputy Warden (ADW) Jacqueline Nadeau, Food Service Director Raymond Schuh and Warden Jeffrey Woods.

On July 6, 2011, Plaintiff, a kosher cook, claims that Defendant Aikens told him to make special diet trays and food loaves. Plaintiff mentioned that it was no longer the responsibility of the kosher cooks to make those trays. Defendant Aikens responded, "its your job today." (Compl., docket #1, Page ID#3.) Plaintiff replied that he would file a grievance against her if he had to perform those duties. When Plaintiff went to the back dock to retrieve a separate cart for the kosher trays, he ran into Defendant Aikens again. After exchanging words with Aikens, Plaintiff was placed in segregation for threatening behavior. Plaintiff complained to Defendants Schuh, O'Brien, Nadeau and Woods about the incident to no avail.

On July 6, 2011, Plaintiff alleges that he received a "false" major misconduct for threatening behavior from Defendant Aikens. (*Id.*, Page ID#4.) On July 15, 2011, Hearings Officer O'Brien conducted Plaintiff's misconduct hearing and Aikens testified. However, Plaintiff complains that O'Brien did not ask Aikens any of Plaintiff's questions. Plaintiff was ultimately found guilty of the misconduct. Because of his misconduct conviction, Plaintiff lost his work assignment as a kosher cook, was removed from a vocational class, his security level was increased and he had to send property home.

On July 25, 2011, Defendant Nadeau held Plaintiff's classification hearing and placed Plaintiff in administrative segregation. Once he was released from segregation on September 16, 2011, Plaintiff was classified to a higher security level. Plaintiff argues that Defendant Nadeau should have investigated the July 6, 2011 misconduct before placing him at the higher security level.

Plaintiff states that he filed several grievances against Defendant Aikens prior to his misconduct ticket. He also filed a grievance concerning the July 6, 2011 major misconduct. Plaintiff alleges that Defendant Schuh reviewed those previous grievances against Aikens and responded in Plaintiff's favor. Plaintiff claims that Schuh would report Aikens to a supervisor if Aikens continued to harass Plaintiff. After the July 6, 2011 misconduct, however, Defendant Schuh refused to help Plaintiff. On August 9, 2011, Plaintiff alleges that Defendant Schuh fabricated a Step I response to Plaintiff's grievance for the misconduct ticket. Plaintiff then filed a grievance against Defendant Schuh for his Step I response.

Plaintiff kited Warden Woods regarding the major misconduct ticket but Woods only suggested that Plaintiff appeal the misconduct. Plaintiff also complains that Defendant Woods denied Plaintiff's Step II grievance appeal regarding the major misconduct and granted several continuances to keep Plaintiff in segregation. Plaintiff ultimately filed a grievance against Warden Woods for allowing staff "to act under such a code of conduct" and for failing to investigate Plaintiff's claims. (Compl., Page ID#7.)

Reading Plaintiff's complaint liberally, *see Haines*, 404 U.S. at 520, Plaintiff alleges that Defendants violated his First, Eighth and Fourteenth Amendment rights. In violation of his First Amendment rights, Plaintiff asserts that Defendant Aikens retaliated against him by giving him a "false" major misconduct ticket for filing grievances against her. (*Id.*, Page ID#4.) In violation of

his Eighth Amendment rights, Plaintiff claims that Defendant Aikens abused her authority by giving Plaintiff a fabricated misconduct ticket, Defendants O'Brien, Nadeau, Schuh and Woods failed to intervene to prevent Aikens' misuse of authority, and Defendants Schuh and Woods jeopardized Plaintiff's safety by failing to stop Defendant Aikens' abuse of authority. In violation of his due process rights, Plaintiff claims that Defendant Aikens fabricated a major misconduct ticket, Defendant Woods wrongly denied Plaintiff's grievance appeal, Defendant Schuh falsified a grievance appeal, Defendant O'Brien failed to investigate Plaintiff's "false" major misconduct ticket, and Defendant ADW Nadeau failed to investigate Plaintiff's major misconduct conviction before increasing his security level. (*Id.*, Page ID#4.) Plaintiff further alleges that Defendants O'Brien, Nadeau, Schuh and Woods' actions constituted negligence under Michigan law.

For relief, Plaintiff requests declaratory and injunctive relief and monetary damages.

II.     Immunity

Plaintiff asserts that Hearings Officer O'Brien failed to investigate his major misconduct ticket in violation of his due process rights. Plaintiff also claims that Defendant O'Brien failed to intervene to prevent Defendant Aikens' "misuse of authority." (Compl., Page ID#8.) Defendant O'Brien is a hearing officer whose duties are set forth at MICH. COMP. LAWS § 791.251 through § 791.255. Hearing officers are required to be attorneys and are under the direction and supervision of a special hearing division in the Michigan Department of Corrections. *See* MICH. COMP. LAWS § 791.251(e)(6). Their adjudicatory functions are set out in the statute, and their decisions must be in writing and must include findings of facts and, where appropriate, the sanction imposed. *See* MICH. COMP. LAWS § 791.252(k). There are provisions for rehearings, *see* MICH. COMP. LAWS § 791.254, as well as for judicial review in the Michigan courts. *See* MICH. COMP.

LAWS § 791.255(2). Accordingly, the Sixth Circuit has held that Michigan hearing officers are professionals in the nature of administrative law judges. *See Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988). As such, they are entitled to absolute judicial immunity from inmates' § 1983 suits for actions taken in their capacities as hearing officers. *Id.*; *and see Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *cf. Pierson v. Ray*, 386 U.S. 547, 554-55 (1967) (judicial immunity applies to actions under § 1983 to recover for alleged deprivation of civil rights). Therefore, the Court will dismiss Plaintiff's action against Defendant O'Brien on immunity grounds.

    III.    <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more

than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Due Process Clause

#### 1. Misconduct Charge

Plaintiff claims that he received a "false" major misconduct ticket from Defendant Aikens. (Compl., docket #1, Page ID#4.) A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his major misconduct conviction resulted in any loss of good-time credits, nor could he. The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[1] for prisoners convicted for crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. 481 F.3d at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty

---

[1] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. MICH. COMP. LAWS § 800.33(5).

interest, Plaintiff has no due-process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation. *See Sandin v. Connor*, 515 U.S. 472 (1995). Plaintiff has not identified any significant deprivation arising from his convictions. Accordingly, Plaintiff's due process claim fails. *See Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (unless a prison misconduct conviction results in an extension of the duration of a prisoner's sentence or some other atypical hardship, a due-process claim fails).

### 2. Security Classification

Plaintiff argues that ADW Nadeau failed to investigate his major misconduct conviction before increasing Plaintiff's security level. The Supreme Court has held that a prisoner does not have a protected liberty interest in the procedures affecting his classification and security because the resulting restraint does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. In *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995), the Sixth Circuit applied the *Sandin* test to the claim of a Michigan inmate that the mandatory language of the MDOC's regulations created a liberty interest that he receive notice and hearing before being placed in administrative segregation. The court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *Id; see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, a plaintiff cannot successfully claim that

his due process rights were violated because, "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Moreover, the Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim*, 461 U.S. at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976). The Sixth Circuit has followed the Supreme Court's rulings in a variety of security classification challenges. *See, e.g.*, *Cash v. Reno*, No. 97-5220, 1997 WL 809982, at *1-2 (6th Cir. Dec. 23, 1997) (prisoner's allegation that he was placed in a security level higher than warranted based on the information contained in his prison file failed to state a due process claim because he had no constitutional right to be held in a particular prison or security classification); *O'Quinn v. Brown*, No. 92-2183, 1993 WL 80292, at *1 (6th Cir. Mar. 22, 1993) (prisoner failed to state a due process or equal protection claim regarding his label as a "homosexual predator" because he did not have a constitutional right to a particular security level or place of confinement). Because Plaintiff does not have a constitutional right to a particular security level or classification, he fails to state a claim for the increase in his security classification by ADW Nadeau.

### 3. Grievances

Plaintiff claims that Defendants Schuh and Woods wrongly denied his grievance appeals. Plaintiff has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430

(7th Cir.1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim,* 461 U.S. at 249; *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, the conduct of Defendants Schuh and Wood did not deprive him of due process. Moreover, Defendants Schuh and Wood cannot be held liable under § 1983 merely because they denied Plaintiff's grievance appeals. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (defendants could not be held liable for plaintiff's termination from his commissary job when their only roles in the action involved the denial of administrative grievances or the failure to act).

### B. Eighth Amendment

Plaintiff claims that Defendant Aikens violated his Eighth Amendment rights by filing a fabricated misconduct ticket against Plaintiff and Defendants O'Brien, Nadeau, Schuh and Woods should have intervened "to prevent the misuse of authority." (Compl., docket #1, Page ID#8.) Plaintiff also alleges that Defendants Schuh and Woods jeopardized Plaintiff's safety by failing to stop Defendant Aikens' abuse.

The Cruel and Unusual Punishments Clause of the Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *Trop v. Dulles*, 356 U.S. 86 (1958). The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The Eighth Amendment places restraints on prison officials so that they may not use excessive physical force against

prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer,* 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)).

When determining whether a prison official's conduct falls below this standard, the Court employs a two-prong test containing an objective and a subjective component. The objective component considers whether the alleged deprivation was sufficiently serious, whereas the subjective component examines the official's state of mind to determine whether he acted with "deliberate indifference" to inmate health or safety. *Id*.

With respect to the objective prong of the analysis, contemporary standards of decency determine whether conditions of confinement are cruel and unusual. *See Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004) (citing *Rhodes*, 452 U.S. at 346). Contemporary standards of decency are violated only by "extreme deprivations" which deprive the prisoner of the "minimal civilized measure of life's necessities." *Id.* (quoting *Hudson v. McMillan*, 503 U.S. 1, 9 (1992)). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987).

If the objective test is satisfied, the Court must then determine whether the prison official acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. In other words, was the official deliberately indifferent to Plaintiff's health or safety. *Id*. However, the Eighth Amendment is not implicated where prison officials simply acted with negligence. *See Perez v. Oakland Cnty.*, 466 F.3d 416, 423 (6th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06

(1976)). In sum, to establish that the prison official acted with deliberate indifference, Plaintiff must "present evidence from which a trier of fact could conclude that the official 'was subjectively aware of the risk and disregard [ed] that risk by failing to take reasonable measures to abate it.'" *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (quoting *Farmer*, 511 U.S. at 829, 847).

1. Misconduct Ticket

Plaintiff alleges that Defendant Aikens filed a fabricated misconduct ticket against him. However, the Sixth Circuit has held that the filing of a false misconduct report does not constitute punishment under the Eighth Amendment. *See Williams v. Reynolds*, 198 F.3d 248 (6th Cir. 1999) (unpublished table decision) ("neither verbal harassment or threats nor the filing of a false misconduct report constitute punishment within the context of the Eighth Amendment") (citing *Ivey*, 832 F.2d at 955, and *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)); *see also Bruggeman v. Paxton*, 15 F. App'x 202, 205 (6th Cir. 2001) (a prisoner's claim that he was punished on the basis of a false misconduct report fails to state an Eighth Amendment claim). Plaintiff therefore fails to state an Eighth Amendment claim against Defendant Aikens.

Because Defendant Aikens did not violate Plaintiff's Eighth Amendment rights for allegedly filing a fabricated misconduct report, Plaintiff's claim that Defendants Nadeau, Schuh and Woods should have intervened necessarily fails to state an Eighth Amendment claim. Moreover, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir.

2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Nadeau, Schuh and Woods engaged in any active unconstitutional behavior with respect to Plaintiff's misconduct conviction. Accordingly, he fails to state a claim against them.

### 2. Failure to Protect

Plaintiff claims that Defendants Schuh and Woods violated his right to personal safety under the Eighth Amendment by failing to stop Defendant Aikens' alleged abuse of authority. (Compl., Page ID#8.) Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). To establish a violation of this right, two requirements must be met. *Farmer*, 511 U.S. at 834. First, the plaintiff must demonstrate that his mistreatment was objectively "sufficiently serious." *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (citing *Farmer*, 511 U.S. at 834). Specifically, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 833. Second, the plaintiff must establish that the prison official acted with deliberate indifference to the inmate's safety. *Id.* To act with deliberate indifference, the official must know of and disregard "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Plaintiff fails to satisfy the objective component of an Eighth Amendment claim. He fails to identify the existence of any "reasonable fear for personal safety." *Thompson*, 29 F.3d at 242-43. Plaintiff merely alleges that he fears abuse by Defendant Aikens. If the abuse that he fears is further fabricated misconducts, "false" misconducts do not violate the Eighth Amendment. *See Williams*, 198 F.3d at 248; *see also Bruggeman*, 15 F. App'x at 205. Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendant Aikens.

Further, to the extent that Plaintiff alleges that Defendants Schuh and Woods failed to act, his argument lacks merit. *See Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson*, 556 F.3d at 495. As previously stated, liability cannot be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers*, 368 F.3d at 888. Accordingly, Plaintiff fails to state a claim against Defendants Schuh and Woods.

### C. First Amendment

Plaintiff asserts that Defendant Aikens retaliated against him by giving him a major misconduct ticket for filing grievances in violation of his First Amendment rights. At this stage of the proceedings, Plaintiff has sufficiently stated allegations to support a First Amendment retaliation claim against Defendant Aikens.

### D. State Law

Plaintiff alleges that Defendants O'Brien's, Nadeau's, Schuh's and Woods' actions constituted negligence under Michigan law. To the extent Plaintiff seeks to invoke this Court's supplemental jurisdiction over his state-law negligence claim against Defendants O'Brien, Nadeau, Schuh and Woods, the Court declines to exercise jurisdiction. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and

the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id*. Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 129 S. Ct. 1862, 1866-67 (2009), *cited in Orton v. Johnny's Lunch Franchise,LLC*, No. 10-2044, slip op. at 10 (6th Cir. Feb. 21, 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claim against Defendants O'Brien, Nadeau, Schuh and Woods will be dismissed without prejudice.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Woods, Schuh, Nadeau and O'Brien will be dismissed on immunity grounds and/or for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss Plaintiff's Eighth Amendment claim against Defendant Aikens. The Court will serve Plaintiff's First Amendment claim against Defendant Aikens.

An Order consistent with this Opinion will be entered.


Dated: January 15, 2013                             /s/ Robert Holmes Bell
                                                    ROBERT HOLMES BELL
                                                    UNITED STATES DISTRICT JUDGE